# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 20-1515V
UNPUBLISHED

| | |
|---|---|
| ABIGAIL STRATTON,<br><br>                     Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                     Respondent. | Chief Special Master Corcoran<br><br>Filed: August 22, 2025 |

*Bijan Esfandiari,* Wisner Baum, LLP, Los Angeles, CA, for Petitioner.

*Voris E. Johnson*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION ON REMAND DENYING AWARD OF ATTORNEY'S FEES AND COSTS**[1]

On November 2, 2020, Abigail Stratton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa—10 through 34[2] (the "Vaccine Act"). Petitioner alleged that the human papillomavirus ("HPV") vaccine she received on November 6, 2017, caused her to develop postural orthostatic tachycardia syndrome ("POTS")[3] and autonomic dysfunction. ECF No. 1 ¶ 9. After withdrawing the case (consistent with the Vaccine Act's provisions for doing so after the case had been pending for 240 days) to litigate her claim in federal district court,[4] Petitioner sought an

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "Section" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] POTS is a group of symptoms that sometimes occur when a person assumes an upright position. These symptoms include tachycardia (excessive heart rate), tremulousness, lightheadedness, sweating, and hyperventilation. *Dorlands Medical Dictionary Online* (last accessed August 12, 2025).

[4] After her vaccine case was dismissed, Petitioner filed a civil action in federal district court on July 21, 2021. Pl.'s Compl., *Stratton v. Merck & Co., Inc.,* No. 2:21-cv-2211 (D.S.C. filed on July 21, 2021). On April

award of fees and costs for work performed on the matter up to the time of withdrawal. Over Respondent's objections, I found that Petitioner had demonstrated a reasonable basis for her claim, and granted a fees award. *Stratton v. Sec'y of Health & Hum. Servs.*, 2023 WL 2337224 (Fed. Cl. Spec. Mstr. Feb. 9, 2023) (the "Fees Decision").

The Court of Federal Claims initially upheld the Fees Decision and its finding of reasonable basis, denying Respondent's motion for review. Op. and Order, *Stratton v. Sec'y of Health & Hum. Servs.*, No. 1:20-vv-01515 (Fed. Cl. May 31, 2023); ECF No. 52. But the Federal Circuit has since vacated the Fees Decision, remanding the case so that I may more fully explain my reasonable basis finding. *Stratton v. Sec'y of Health & Hum. Servs.*, 138 F.4th 1368 (Fed. Cir. June 6, 2025).

On remand, I have re-evaluated the facts in order to meet the Circuit panel's mandate, and to issue a more detailed decision explaining my reasoning. I now find that Petitioner has *not* established a reasonable basis for her claim, and therefore is not entitled to a fees award.

I.   **Relevant Medical Facts**

Petitioner received the HPV vaccine on November 6, 2017 (when she was 19 years old), and alleged that thereafter she developed headaches, dizziness, nausea, and abdominal pain, later on being diagnosed with POTS. ECF No. 22 at 3-4; Ex. 3 at 8. Petitioner maintained that prior to vaccination, she had not experienced POTS "or any other symptoms of autonomic dysfunction." ECF No. 1 ¶ 2. But her pre-vaccination medical history, of which Petitioner provided no detail, in fact evidences a number of symptoms and complaints that are comparable to what she claims to have experienced thereafter.

For example, in September 2015, Petitioner's mother told her doctor that Petitioner had recently nearly passed out when running cross country on two separate occasions, and that Petitioner developed heart palpitations and shortness of breath before each

---

12, 2022, Petitioner, along with 33 other cases, filed a motion to transfer with the Judicial Panel on Multidistrict Litigation to consolidate their cases in a single district court. Mot. to Transfer, *In Re: Gardasil Products Liability Litigation*, No. 3036 (J.P.M.L. filed Apr. 12, 2022). Although Petitioner case was listed in the initial motion to transfer before the Judicial Panel, the Judicial Panel's order granting transfer to a single district court no longer listed Petitioner's case as among those being transferred, and noted that two cases (not identified) had been dismissed after the motion to transfer was filed. Transfer Order, *In Re: Gardasil*, No. 3036 (J.P.M.L. issued Aug. 4, 2022). Back in the original district court, Petitioner had filed a joint stipulation of dismissal with prejudice on June 17, 2022, before the Judicial Panel transferred the cases. Stip. of Dismiss., *Stratton*, No. 2:21-cv-2211 (D.S.C. filed June 17, 2022). In the district court to which the multidistrict litigation was transferred, Petitioner's case information does not appear on the Court's docket among the hundreds of other cases. *In Re: Gardasil Products Liability Litigation*, No. 3:22-md-3036 (W.D.N.C.).

occasion. Ex. 1 at 18. At an emergency room visit on January 15, 2016, Petitioner described a syncope episode from earlier that day where she passed out after experiencing "heart racing" palpitations and lightheadedness. Ex. 8 at 55. Petitioner said that she was "feeling lightheaded every morning for the past 4 months" and almost passes out when she tries to stand up. *Id.* at 54. On January 15, 2016, Petitioner's mother called the doctor's office to tell them she had passed out earlier that day, and the office advised that Petitioner should go to the emergency room. *Id.* at 66. Thereafter, due to dizziness, Petitioner underwent a CT scan on February 3, 2016. *Id.* at 163.

In addition, on July 30, 2017, Petitioner went to the emergency room for abdominal pain over the past three days that was determined to be a kidney infection. Ex. 8 at 174, 201. On September 28, 2017, she sought medical attention for intermittent dizziness, light headedness, nausea, vomiting, and cough. Ex. 7 at 176, 185. And Petitioner stated at this time that she began taking medication to treat ADHD three weeks earlier. *Id.*

Records from treatment events after the November 6, 2017 vaccination do not establish dysautonomia[5] concerns of the kind that would be associated with POTS. For example, at a November 27, 2027 appointment for a urinary tract infection, Petitioner noted that she had a rash on her chest that was not itchy.[6] Ex. 5 at 28-31. At a follow-up appointment on November 30, 2017, Petitioner noted that the rash on her chest had not changed but was now on her abdomen and arms. *Id.* at 33. The treater determined that the rash was likely pityriasis rosea, and Petitioner could stop using the prescribed medication to treat it. *Id.* This rash subsequently resolved in less than two months, and Petitioner sought no additional care for it. Ex. 11 ¶ 2.

Next, on January 8, 2018, Petitioner was diagnosed with rectal bleeding and menstrual cramps. Ex. 3 at 5. And on February 19, 2018, Petitioner experienced a bad headache with nausea for several hours and was later diagnosed with a migraine. Ex. 9 at 174, 177.

In her declaration, Petitioner described an incident (or possibly reoccurring incidents) during the summer of 2018 where she would nearly pass out after exercising. Ex. 11 ¶¶ 7, 8. At a June 10, 2018 appointment, Petitioner had a week-long sore throat, tested positive for mononucleosis, and was advised to avoid close contact with others.

---

[5] Dysautonomia is a malfunction of the autonomic nervous system, which regulates the activity of cardiac muscle, smooth muscle, glandular epithelium, and other involuntary biologic processes. *Dorlands Medical Dictionary Online* (last accessed August 12, 2025). POTS could be considered evidence of a dysautonomic reaction.

[6] Petitioner did not allege in her petition that the HPV vaccination caused this rash or any other skin condition.

Ex. 5 at 45-46. Petitioner has also contended that on June 18, 2018, she had been having on and off urinary tract infection symptoms since December 2017. Ex. 3 at 15. Petitioner has not submitted any medical records documenting reports of her passing out during the summer of 2018.

The first record proof of any possible HPV vaccine-related reaction is from a January 15, 2019 appointment, when Petitioner made such representations to a treater, and that she therefore did not want to complete the vaccination series, but this record lacks any additional detail recorded about the claimed reaction. Ex. 3 at 2. Two months later, on March 14, 2019, Petitioner was seen for a panic attack with breathlessness and a sensation that she would pass out. Ex. 4 at 6. Petitioner told the provider that she believed she was dehydrated. *Id.* At this visit, Petitioner's medical history was noted as "significant for anxiety, migraines, and constipation" with abdominal pain possibly related to the constipation since the summer of 2018. *Id.* at 5-6. Petitioner had an abnormal EKG and was referred to cardiology. *Id.* at 11.

When seeing a cardiologist on May 13, 2019, Petitioner stated she had an abnormal EKG "several years ago" that had been repeated in March. Ex. 4 at 59. Petitioner described her most frequent symptom as "occasional orthostatic dizziness" over the "last several years." *Id.* The records state that Petitioner has an ectopic atrial rhythm that was first demonstrated "several years ago" and began *prior* to therapy for ADHD (i.e., September 2017). *Id.*

Petitioner also alleges that sometime in July 2019 she saw an electrophysiologist who now diagnosed her with POTS. Ex. 11 ¶ 13; Ex. 4 at 93. Petitioner has not filed any medical records from this electrophysiologist visit, however. Later in July, Petitioner was diagnosed with "mild POTS" by a different provider. *Id.* at 333. When establishing care with a new provider in September 2019, Petitioner noted that she had contracted mono after receiving the vaccination "and then started having [cardiovascular] and [gastrointestinal] symptoms." *Id.* at 389; ex. 1 at 18 (heart palpitations and shortness of breath in September 2015); ex. 8 at 54-55 (four months of palpitations and lightheadedness before January 2016); (dizziness, lightheadedness, nausea, vomiting, and cough in September 2017).

## II. Procedural History

As noted, this matter was filed in November 2020, and it alleged a causation-in-fact injury from receipt of an HPV vaccine (there is no Table claim for HPV vaccine-caused POTS). Specifically, Petitioner contended as follows:

4

> Ms. Stratton suffered an adverse reaction to a Gardasil vaccination administered on November 6, 2017. Had Petitioner known the truth about Merck's conduct with Gardasil and the potential adverse effects, she would not have received this vaccine. Merck misrepresented the nature of Gardasil, conducted rigged clinical trials by using an aluminum-based placebo, received fast-tracked assistance from the FDA, and then guilted victims into receiving the Gardasil vaccination with a false marketing campaign that Gardasil was a cure for cancer.

Ex. 1 at 1-2. Thus, the face of the Petition itself demonstrated that Petitioner did not merely contend she experienced an adverse reaction due to a vaccination (the *sole* question to be resolved in a Vaccine Act claim), but instead that she believed that the vaccine *itself* was inherently unsafe, and that its manufacturer had committed fraudulent acts in hiding this fact (with governmental complicity contributing to a massive scam on the unsuspecting public). She otherwise identified as her injury "POTS and autonomic dysfunction." *Id.* at 3 ¶ 9.

In the Petition, Ms. Stratton also disclosed her actual purpose in filing this action. Rather than seeking to have her injury claim adjudicated by the Office of Special Masters ("OSM"), Petitioner acknowledged outright that she was "statutorily compelled to initiate this claim prior to pursuing a cause of action against Merck directly. 42 U.S.C. § 300aa–11(a)(2)." ECF No. 1 at 1. She also noted that the claim had been filed on the eve of expiration of the Act's three-year limitations period – and thus counsel had not had the chance to review the medical records for objective support for the claim prior to the Petition's filing. *Id.* at 1 n.1.

A "240-Day Order" was issued in this case on June 30, 2021 (ECF No. 18). OSM utilizes this order to notify claimants that the Act permits them to voluntarily withdraw their claim from consideration at this point if the matter is unresolved by the approximate eight-month post-filing date, but it invites them to agree to pursue the claim thereafter.[7] In response, Petitioner filed a notice on July 6, 2021, stating her intent to withdraw from the Vaccine Program. ECF No. 19. In it, she explicitly represented again that she had filed this matter at OSM only because she was "statutorily compelled" to do so before suing the vaccine manufacturer directly. *Id.* I accordingly issued an Order Concluding Proceedings pursuant to Vaccine Rule 10(d) on July 8, 2021. ECF No. 20.

---

[7] Section 21(b) (procedure regarding withdrawal of petitions). OSM has utilized the 240-Day Order practice for many years – and is indeed compelled to so act, since the crush of filings, along with limits on the number of special masters permitted by the Act, has rendered OSM's ability to resolve claims within eight months of filing an impossibility.

A few days later, on July 12, 2021, Petitioner filed a motion for attorney's fees and costs. ECF No. 22. The amount requested was modest as far as most Program claims go - **$10,789.96** – although not *de minimis* when Petitioner's underlying and acknowledged, up-front desire to "pull" the case from OSM at the first possible moment is taken into account.

On July 23, 2021, Respondent filed an opposition brief arguing that Petitioner had failed to establish reasonable basis and good faith for her claim. ECF No. 23. On July 27, 2021, Petitioner replied to Respondent's arguments. ECF No. 24. Petitioner filed a supplemental motion for attorney's fees for the work done to file her reply, an additional $1,386.00 for a total of $12,175.96. ECF No. 27.

On February 9, 2023, I issued a decision finding that Petitioner had reasonable basis for her claim and granting an award of fees and costs, but reducing the requested amount for specific issues with the hours billed and applying a general reduction to the award. *Stratton,* 2023 WL 2337224. In my decision, I acknowledged that "Respondent's skepticism of the claim's likelihood of success is reasonable," but I determined that Petitioner had filed "sufficient medical records to satisfy the exceedingly low evidentiary standard" of reasonable basis. *Id*. at *6. I cautioned that the lack of validity I had repeatedly found in HPV claims could lead me to deny future motions for attorney's fees and costs in cases alleging similar injuries. *Id*.

### III.     Appeal and Circuit Remand Order

On March 8, 2023, Respondent filed a Motion for Review challenging the Fees Decision's conclusion that the evidence in the case supported reasonable basis and asserting that it did not set forth analysis of the evidence. ECF No. 37. Petitioner cross-moved for review, objecting to the reductions made to the award. ECF No. 39. The parties subsequently filed responses and replies to these motions for review.

On May 31, 2023, the Court of Federal Claims issued an opinion denying Respondent's motion for review, holding that my finding of reasonable basis was not arbitrary or capricious. *Stratton*, No. 1:20-vv-01515, slip. op. at 4; ECF No. 52. The Court also upheld the reduction of fees for the specific issues with the hours billed detailed in the Fees Decision but reversed the general reduction of fees. *Id.* at 4-6. Lastly, the Court denied Petitioner's motion for disqualification finding that Petitioner's claims had not overcome the presumption of impartiality. *Id.* at 7-9.[8]

---

[8] On March 20, 2023, Petitioner moved to disqualify me from this case (and numerous other similarly situated cases) alleging that my fees determinations in HPV cases could not be impartial, since I had not accepted causation in any of the cases alleging dysautonomic reactions to the HPV vaccine. ECF No. 47. All such motions to disqualify have been denied. *Stratton*, No. 1:20-vv-01515, slip. op. at 4; ECF No. 52.; *Levy v. Sec'y of Health & Hum. Servs.*, No. 20-1791V, 2023 WL 6143219 (Fed. Cl. June 26, 2023); *Fetters*

On August 2, 2023, Respondent initiated appeal at the Federal Circuit. ECF No. 54. In his appeal, Respondent again argued that the evidence in the case did not support reasonable basis, and that the Fees Decision did not contain any analysis of the record evidence. Appellant's Br. at 15, *Stratton v. Sec'y of Health & Hum. Servs.*, 138 F.4th 1368 (Fed. Cir. 2023) (No. 2023-2230). Oral argument was held on September 4, 2024. ECF No. 25, *Stratton*, 138 F.4th 1368 (No. 2023-2230).

On June 6, 2025, the Federal Circuit issued an opinion finding that I had "failed to sufficiently explain [my] conclusion that Ms. Stratton had a reasonable basis for her petition." *Stratton*, 138 F.4th at 1371. The Federal Circuit vacated and remanded for me to "readdress the reasonable basis issue." *Id.* at 1372. The opinion also noted that "we express no opinion on whether the Chief Special Master's decision [regarding reasonable basis] was correct or incorrect." *Id.* at 1372, n.3.[9]

On June 16, 2025, new counsel filed a consented motion to substitute as Petitioner's counsel for the original counsel, Andrew Downing. ECF No. 56. A few days later, Petitioner filed a notice of additional authority identifying a 2025 medical article and expert reports filed in a non-Program case in 2024 litigating injuries based on the same HPV vaccine. ECF Nos. 57, 58.

On July 10, 2025, Respondent filed a response to Petitioner's notice opposing consideration of the additional material. ECF No. 59. On July 28, 2025, the Federal Circuit issued the mandate returning jurisdiction of this case. ECF No. 60.

## IV.   Fees and Costs for Unsuccessful Claims

The Vaccine Act permits fees in *some* unsuccessful cases – a classification that includes cases that are terminated without final resolution, as here. This is in keeping with the Program's goal of ensuring that petitioners have adequate assistance from counsel when pursuing their claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S. Ct. 1886, 1895 (2013) (discussing this goal when determining that attorney's fees and costs may be awarded even when the petition was untimely filed). There is a threshold requirement for fees under such circumstances, however – petitioners must demonstrate "that the petition was brought in

---

*v. Sec'y of Health & Hum. Servs.*, 166 Fed. Cl. 189 (May 5, 2023).  Petitioner did not appeal the denial of the motion to disqualify, nor were any other such determinations challenged.

[9] Respondent did not challenge my initial determination that Petitioner filed her claim in good faith on review or on appeal. *Stratton*, No. 1:20-vv-01515, slip. op. at 3; *Stratton*, 138 F.4th at 1371 n.2. Thus, the issue of good faith was not before the Federal Circuit, and my initial determination that this element for allowing fees in an "unsuccessful" case has been satisfied remains in place.

7

good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Fees can still be adjusted, or denied entirely, however, even where reasonable basis is established.

As the Federal Circuit has explained, the relevant analysis involves two distinct inquiries: (1) a subjective one assessing whether the petition was brought in good faith and (2) an objective one ascertaining whether reasonable basis for the petition existed. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Good faith is a subjective test, satisfied through subjective evidence"); *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007) ("[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation."); *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (May 15, 2014)) (addressing the objective requirements of reasonable basis).

My prior determination that the matter was initiated in good faith has not been challenged, leaving only reasonable basis to be determined. "Reasonable basis … is an objective test, satisfied through objective evidence." *Cottingham,* 971 F.3d at 1344. The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).

Reasonable basis is an extremely lenient standard. *Hughes v. Sec'y of Health & Hum. Servs.*, No. 16-930V, 2021 WL 6621169, at *3 (Fed. Cl. Spec. Mstr. Dec. 29, 2021) *mot. for review denied*, 154 Fed. Cl. 640 (June 4, 2021). Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham*, 971 F.3d at 1345-46. Nevertheless, this standard can be failed – and determinations that a claim's allegations lack objective support that should have steered counsel against initiation of a claim can result in complete denial of fees. *Goodgame v. Sec'y of Health & Hum. Servs.*, No. 17-339V, 2021 WL 1940817, at *1 (Fed. Cl. Spec. Mstr. Apr. 16, 2021), *mot. for review denied,* 157 Fed. Cl. 62 (Oct. 29, 2021); *L.P. v. Sec'y of Health & Hum. Servs.*, No. 17-203V, 2018 WL 1044952, at *1 (Fed. Cl. Spec. Mstr. Jan. 30, 2018), *mot. for review denied*, 150 Fed. Cl. 396 (Oct. 8, 2020). The good faith acts of counsel, moreover – including the need to file a claim before a looming limitations period cut-off – are relevant only to good faith, and thus do not shed light on a claim's objective support*. Simmons*, 875 F.3d at 636.

In evaluating whether reasonable basis exists, a special master should take into account whether some of the fundamental substantiating elements that any filed petition must possess have been demonstrated on the basis of evidence filed. For example, the Federal Circuit has noted that a "petition must include 'an affidavit, *and supporting documentation*, demonstrating that the person who suffered such injury:

(1) received a vaccine listed on the Vaccine Injury Table;

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury."

*Cottingham,* 971 F.3d at 1345-46 (emphasis added).

## ANALYSIS

**I.      Effort to Establish Rubric for Addressing Host of
             Withdrawn HPV Vaccine-POTS Claims**

The circumstances for this reasonable basis challenge did not arise in a vacuum – and they do not simply involve claims that the HPV vaccine can cause POTS, more general dysautonomia, or any other kind of injury. Rather, this matter is one of many initiated by the same the attorney, who has initiated, then withdrawn, approximately *320 cases[10] from the Program* – in each instance so the claimant could either join a larger-

---

[10] Petitioner's initial counsel stopped filing HPV cases in the Vaccine Program toward the end of 2024, but a number of other attorneys have continued filing and withdrawing HPV cases – over additional 90 cases from 2023 to the present. Most, but not all, of these cases have motions for attorney's fees and costs filed in them, and most remain pending.

scale action against the HPV vaccine's manufacturer, Merck, or pursue an individual action.[11]

The need to initiate claims within the Vaccine Program, only to withdraw them, was to no small extent a function of the Act's shielding of manufacturers from liability. *Bruesewitz v. Wyeth LLC,* 562 U.S. 223, 229 (2011). A Vaccine Act claimant could only "reach" the Act's provisions governing how manufacturers can be sued by first exhausting his remedies in the Program. Section 21 *et seq.* (defining scope of civil action against manufacturers); *Bruesewitz,* 562 U.S. at 229. Counsel desired to obtain summary resolutions of these claims in order to accomplish this goal. He may also have had some sense (based on both cases he personally litigated, as well as others) that claims that the HPV vaccine causes POTS were *highly* unlikely to succeed within the Program – since they had repeatedly been determined to lack reliable scientific or medical support. *Atjian v. Sec'y of Health & Hum. Servs.,* No. 21-1413V, 2022 WL 17587757, at *10 (Fed. Cl. Spec. Mstr. Oct. 18, 2022) (setting forth large number of cases issued since 2019 denying entitlement in comparable circumstances).[12]

Because of the foregoing, the number of these only preliminarily-substantiated cases shot up substantially over a two-year period. I accordingly (and in retrospect, perhaps naively) attempted to establish a rubric for how these withdrawn claims would be treated – with the goal of resolving fees for them in a predictable matter, without the need for lengthy "secondary litigation" processes. *See Atijan*, 2022 WL 17587757, at *10. In effect, I noted that claims that the HPV vaccine can cause POTS would be treated differently depending on *when* they had been filed, with cases initiated *after* OSM's consistent rejection of the theory being treated less favorably than those begun before. *Id.* at *10. If counsel chose to file an HPV vaccine-POTS claim (for whatever ultimate reason) *despite* his knowledge that the claim was very likely to be rejected, he could not expect a fees award. Conversely, claims filed before the OSM prevailing view was as evident would need to be evaluated as if they had a chance of success – albeit subject to the need to demonstrate objective evidentiary support for the claim.

---

[11] A large number of the petitioners in withdrawn HPV cases joined a federal multidistrict litigation against Merck. *See generally In Re*: *Gardasil Products Liability Litigation*, No. 3:22-md-3036 (W.D.N.C. transferred on Aug. 4, 2022). Earlier this year, summary judgment was granted to the defendant against the bellwether POTS cases in that matter, although the determination has been challenged. *Id.***,** appeals docketed, Nos. 24-1828, 24-1831, 24-1832, 25-1383, 25-1796 (4th Cir) (some cases are appealing dismissal for a statute of limitations issue, many POTS cases are appealing the district court's grant of summary judgment, and cases with other injuries remain pending before the district court). In addition, at least two former Vaccine Program petitioners are pursuing individual state court cases against Merck. *Robi v. Merck & Co., Inc. et al.*, No. BC628589 (Cal. Super. Ct. filed July 27, 2016) (jury trial scheduled for Sept. 15, 2025); *Shain v. Merck & Co., Inc. et al.*, No. 21STCV35340 (Cal. Super. Ct. filed Sept. 24, 2021) (jury trial scheduled for July 22, 2026).

[12] Not one of these special master determinations has ever been successfully challenged on appeal.

I also noted that given counsel's clearly-stated intent to pull Program matters for addition to pending cases against the manufacturer elsewhere – and concomitant intent *not* to litigate the matter at OSM, as the Act envisions – I would expect fees and costs associated with the matter to be as modest as possible. Thus, I would exercise my discretion to reduce fees across the board if it did not appear that counsel had acted with care to minimize legal expenses devoted to a claim he had no actual intent of litigating in the Vaccine Program. *Atijan,* 2022 WL 17587757, at *13.[13]

*Atijan* was not appealed by either party – leading me to believe (incorrectly) that I had arrived upon a fair way to globally resolve fees in these pulled cases. I issued the initial decision for this matter in its wake, based on the expectation that the parties would be able to live with "rough justice" determinations it reflected.

Instead, it appears reasonable basis will need to be addressed piecemeal, in each of the over 260 pending motions for attorney's fees and costs in HPV vaccine cases pulled from the Program – starting with this remand determination. I regardless note that I will continue to look to *Atijan* as guidance – both with respect to (a) whether the claim in question was initiated by counsel with knowledge of its causation failings, and (b) whether the magnitude of fees generated is reasonable for a claim that counsel never expected would be resolved by OSM.

## II.     This Claim Lacked Reasonable Basis

Despite all of the foregoing, a complete and renewed review of the filed medical records in this case leads me to conclude that the claim lacked reasonable basis. I reach this determination *independent* of my view (garnered through direct experience adjudicating comparable matters) that claims alleging POTS as a vaccine injury generally are no longer well-founded (and thus without regard to whether this matter was filed before or after the OSM consensus on entitlement in such cases had been reached).

The essential dispute between the parties in this case is whether Petitioner "sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine." *Cottingham*, 971 F.3d at 1345-46. Since Petitioner's alleged injuries of POTS and autonomic dysfunction are not set forth in the Vaccine Injury Table, Petitioner is not afforded the Table's presumption

---

[13] Respondent interpreted my guidance as simply assuming that reasonable basis had been met in any matters filed prior to the OSM consensus on HPV vaccine-POTS claims. Appellant's Br. at 21 n.13, *Stratton*, 138 F.4th 1368 (No. 23-2230). Respondent was concerned with the cumulative amount of attorney's fees and costs that would be granted under this standard.

11

of causation, and must establish that the HPV vaccine caused her injuries at the evidentiary level of reasonable basis.

Here, the medical record does not establish that Petitioner likely was injured by her receipt of the HPV vaccine in any medically-acceptable timeframe.[14] Petitioner had at least *two years* of symptoms of lightheadedness and other cardiovascular symptoms *before* the vaccination at issue. There is no contemporaneous evidence that she experienced a close-in-time reaction or worsening of her pre-vaccination symptoms. Her first documented, post-vaccination issues arose two to three months later (rectal bleeding, menstrual cramps, and then migraine headaches) – all nonspecific for dysautonomia, and too long after vaccination to attribute to the vaccine. She never complained of *any* vaccine reaction until January 2019, well over a year after vaccination. And she was not diagnosed with POTS until the summer of 2019 – and the cardiac testing that helped confirm the diagnosis noted that Petitioner possessed the same cardiac issue before vaccination. Ex. 4 at 59.

This record is wholly unsupportive, in any objective sense, of the alleged fact of injury. The required "scintilla" is missing, and thus the otherwise easily-met reasonable basis standard is not satisfied in this case. And it is not enough for Petitioner to *allege* in witness statements, sworn or otherwise, that she was injured, since it is well-understood that Program claims cannot prevail solely on the basis of a petitioner's personal assertions or lay beliefs. Section 13(a)(1) (requiring that a special master's findings must be substantiated by medical records or by medical opinion). Otherwise, Petitioner's declaration is unhelpful to support her injuries because many of the details of her medical history and treatment are absent. Nor has she explained how her pre-vaccination history relates.

I also note that reasonable basis would properly be denied *even* if the POTS injury could be shown to have a closer temporal/factual association with vaccination. And that is for the simple reason that the Program has wholly rejected contentions that the HPV vaccine is capable of causing POTS. *See generally A.F. v. Sec'y of Health & Hum. Servs.*, No. 19-446V, 2023 WL 251948, at *23 (Fed. Cl. Spec. Mstr. Jan. 18, 2023) ("[t]here are no persuasive reasoned Program decisions finding that the HPV vaccine can interfere with any aspect of the nervous system sufficiently to cause any form of orthostatic intolerance—whether manifesting as vasovagal syncope, POTS, or some other comparable autonomic dysfunction").

---

[14] *Cottingham v. Sec'y of Health & Hum. Servs.*, 159 Fed. Cl. 328, 334 (Mar. 28, 2022) (sustaining decision that applies the *Althen* test to attorney's fees and costs with the reasonable basis standard), *aff'd*, No. 2022-1737, 2023 WL 7545047 (Fed. Cir. Nov. 14, 2023). Claimants must show a "proximate temporal relationship between the vaccination and injury." *Althen v. Sec'y of Health & Hum. Servs.,* 418 F.3d 1274, 1278 (Fed. Cir. 2005).

This position on POTS has been true for some time, as numerous decisions have concluded. *See,* e.g., *Stiegler v. Sec'y of Health & Hum. Servs.*, No. 21-1152V, 2024 WL 4678300, at *1 (Fed. Cl. Spec. Mstr. Oct. 10, 2024), *mot. for review denied*, 176 Fed. Cl. 786 (Apr. 18, 2025) (POTS and Tdap vaccine); *E.S. v. Sec'y of Health & Hum. Servs.*, No. 17-480V, 2020 WL 9076620, at *42 (Fed. Cl. Spec. Mstr. Nov. 13, 2020)*, mot. for review denied*, 154 Fed. Cl. 149 (May 6, 2021); *Balasco v. Sec'y of Health & Hum. Servs.*, No. 17-215V, 2020 WL 1240917, at *34 (Fed. Cl. Spec. Mstr. Feb. 14, 2020) (articulating that the special master "[did] not find preponderant evidence of a reliable medical theory causally connecting petitioner's HPV vaccinations to either POTS generally or her own fibromyalgia and/or vestibular migraines in particular"); *Johnson v. Sec'y of Health & Hum. Servs.,* No. 14-254V, 2018 WL 2051760, at *24 (Fed. Cl. Spec. Mstr. Mar. 23, 2018) (discussing how the petitioner failed to establish a reliable medical causation theory that the HPV vaccine established autonomic nervous system or orthostatic intolerance conditions); *Combs v. Sec'y of Health & Hum. Servs.*, No. 14-878V, 2018 WL 1581672, at * 1 (Fed. Cl. Spec. Mstr. Feb. 15, 2018) ("[p]etitioner's causation theory—that the HPV vaccine could damage the autonomic nervous system—was scientifically unreliable and unpersuasive"); *K.L. v. Sec'y of Health & Hum. Servs.,* No. 12-312V, 2017 WL 1713110, at *15 (Fed. Cl. Spec. Mstr. Mar. 17, 2017) (noting that respondent demonstrated more persuasively that there was "no link between a number of neurological events, including epilepsy, and receipt of the HPV vaccine"), *mot. for review denied,* 134 Fed. Cl. 579 (Aug. 8, 2017); *L.A.M. v. Sec'y of Health & Hum. Servs.*, No. 11–852V, 2017 WL 527576 (Fed. Cl. Spec. Mstr. Jan. 31, 2017) (concluding that the HPV vaccine not found to cause POTS); *Turkupolis v. Sec'y of Health & Hum. Servs.*, No. 10–351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014) (finding that the HPV vaccine not shown to cause neurocardiogenic syncope). Most of these decisions were issued before this claim's filing, putting counsel on notice of the weakness of the causation theory. And I am aware of no reliable medical or scientific evidence that suggests this view warrants any revision.[15]

## CONCLUSION

It remains my reasoned view that some form of organized system for ascertaining the appropriateness of fees in these hundreds of pulled related cases is needed. Since Respondent long ago abandoned any interest in weighing in on fees requests, it falls to OSM to find a way to manage these matters.

---

[15] I give no weight to items of literature filed long after the case closed on July 8, 2021, in support of the claim's reasonable basis. *See,* e.g., Exs. 19 (ECF No. 32 – filed Nov. 29, 2022) and 20 (ECF No. 58 – filed June 22, 2025). It is now too late to offer additional scientific support for the claim – and it is not proper to evaluate it in ascertaining the claim's reasonable basis, which is a function of *when it was filed*. *Goodgame v. Sec'y of Health & Hum. Servs.*, 157 Fed. Cl. 62, 73 (Oct. 29, 2021) ("the time for introducing these [medical] articles was BEFORE the Special Master issued his ruling on the merits"). The same goes for medical expert opinions offered in other forums and for different claimants. *See* exs. 21-32 (ECF No. 58 – filed June 22, 2025).

Nevertheless, I recognize that cases involving the HPV vaccine that have been pulled from Program consideration are not automatically properly entitled to, or ineligible for, a fees award. What matters in every case is whether objective proof exists to support the claim. I would be more willing to allow fees for a case that alleged some kind of dysautonomic-related injury that was not as well-evaluated as POTS. But here, POTS is the focus of the case, the injury lacks objective support from the medical record, and it did not arise in a medically-acceptable timeframe when measured from vaccination. Counsel could have ascertained its weakness if records had been reviewed before the case was filed – and it is also evident counsel was well aware by November 2020 that this kind of claim stood little to no chance of succeeding. Under the circumstances, the risk of nonpayment for work performed properly resides with counsel.

Accordingly, I hereby **DENY** Petitioner's Motion for Attorney's Fees and Costs and her Supplemental Motion for Attorney's Fees and Costs. In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this Decision.[16]

**IT IS SO ORDERED.**

                                        **s/Brian H. Corcoran**
                                        Brian H. Corcoran
                                        Chief Special Master

---

[16] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.