# In the United States Court of Federal Claims

|                                           |                              |
|-------------------------------------------|------------------------------|
| ABIGAIL STRATTON,                         |                              |
|       *Petitioner*, |                     |
| v.                                        | No. 20-1515[1]               |
| SECRETARY OF HEALTH AND HUMAN SERVICES,   | (Filed: January 5, 2026)     |
|       *Respondent*. |                      |

*Bijan Esfandiari*, Wisner Baum LLP, Los Angeles, CA, for Petitioner.

*Voris Edward Johnson*, Vaccine/Torts Branch Civil Division, U.S. Department of Justice, Washington, DC, for Respondent.

**OPINION AND ORDER**

**LERNER,** *Judge*.

    Petitioner Abigail Stratton requests review of Chief Special Master Brian Corcoran's Decision on Remand denying attorneys' fees and costs. Pet'r's Mem. of Objs. Supp. Mot. for Review of Decision on Remand ("Mot. for Review") at 1, ECF No. 62-1. On November 2, 2020, Ms. Stratton submitted a petition under the National Childhood Vaccine Injury Act ("Vaccine Act"), claiming the Gardasil vaccine for human papillomavirus ("HPV") caused her to contract postural orthostatic tachycardia syndrome ("POTS"). Pet. at 1–2, ECF No. 1. Ms. Stratton subsequently withdrew her Petition and requested attorneys' fees and costs. Notice of Intent to Withdraw Pet. ("Withdrawal") at 1, ECF No. 19; Mot. for Att'ys' Fees and Costs ("Att'ys' Fees Mot.") at 1, ECF No. 22.

    The Chief Special Master first awarded attorneys' fees and costs under the Vaccine Act, but the Federal Circuit remanded the case because the Chief Special Master failed to "adequately explain his finding that Ms. Stratton satisfied the reasonable basis standard" for an attorneys' fees award. *Stratton v. Sec'y of Health & Hum. Servs.*, 138 F.4th 1368, 1373 (Fed. Cir. 2025).

    On remand, the Chief Special Master revisited the reasonable basis issue and denied attorneys' fees, finding Ms. Stratton lacked a reasonable basis for her claim due to discrepancies in the timeline of her POTS symptoms and insufficient medical evidence. Decision on Remand

---

[1] This Opinion was originally filed under seal on December 15, 2025. ECF No. 68. The Court provided the parties the opportunity to review the Opinion and submit proposed redactions by December 29, 2025. The parties did not propose any redactions.

Den. Att'ys' Fees and Costs ("Decision on Remand"), ECF No. 61.  Petitioner filed the instant Motion for Review of that decision.  Mot. for Review at 1.  This Court finds the Chief Special Master properly exercised his authority to deny attorneys' fees and costs because of inconsistencies in Ms. Stratton's medical records and evidence of pre-vaccination symptoms.  *See infra* IV.A.  Accordingly, Petitioner's Motion for Review is **DENIED**.

I.   Background

   A.   Factual Background

Ms. Stratton claims the Gardasil vaccine caused her to contract POTS.  Pet. at 1.  POTS presents when the affected individual assumes an upright position, and its symptoms include "tachycardia (excessive heart rate), tremulousness, lightheadedness, sweating, and hyperventilation."  Decision on Remand at 1 n.3.  The Vaccine Injury Table does not list these symptoms as caused by HPV vaccines.  *See* 42 C.F.R. § 100.3(a).  Petitioner thus alleged Gardasil was the cause-in-fact of her POTS injury.  Pet. ¶ 9; Decision on Remand at 4.

Petitioner claims she "was never sick with POTS, or any other symptoms of autonomic dysfunction" prior to vaccination.  Pet. ¶ 2.  However, the Chief Special Master identified multiple episodes in the medical record where Ms. Stratton exhibited POTS symptoms before receiving the Gardasil vaccine on November 6, 2017.  Decision on Remand at 2, 12.  On September 1, 2015, over two years before her vaccination, Petitioner's mother first reported to Ms. Stratton's doctor that her daughter was experiencing heart palpitations and shortness of breath.  *Id.* at 2–3 (citing Ex. 1 at 18, ECF No. 6-1).[2]

On January 15, 2016, Ms. Stratton fainted, experienced heart palpitations, and was admitted to the emergency room.  *Id.* at 3 (citing Ex. 8 at 55, 66, ECF No. 9-2).  Petitioner reported "she was 'feeling lightheaded every morning for the past 4 months' and almost passes out when she tries to stand up."  *Id.* (quoting Ex. 8 at 54).  According to her doctor's notes from a September 28, 2017 visit, Petitioner continued to suffer from "intermittent dizziness, light headedness, nausea, vomiting, and cough."  *Id.* at 3 (citing Ex. 7 at 176, 185, ECF No. 9-1).  When Ms. Stratton was eventually diagnosed with POTS in 2019, the cardiac testing that helped confirm the diagnosis noted that the same cardiac issues were present before the vaccination.  *Id.* at 12 (citing Ex. 4 at 59, ECF No. 6-4).

The Chief Special Master found that "[r]ecords from the treatment events after the November 6, 2017 vaccination do not establish dysautonomia concerns of the kind that would be associated with POTS."  *Id.* at 3.  For example, in late November 2017, Ms. Stratton reported a large rash that a medical provider found "was likely pityriasis rosea."  *Id.* at 3 (citing Ex. 5 at 33, ECF No. 8-1).  Ms. Stratton then experienced rectal bleeding, menstrual cramps, and migraines in January and February 2018.  *Id.* (citing Ex. 3 at 5, ECF No. 6-3; Ex. 9 at 174, 177, ECF No. 9-4).

---

[2] All citations to exhibits refer to Petitioner's exhibits.

In a Declaration, Petitioner described fainting spells in the summer of 2018. *Id*. (citing Ex. 11 ¶ 7, 8, ECF No. 21-1). However, she did not provide any medical records documenting these incidents. *Id*. at 4. She did submit records from a June 10, 2018 appointment showing she tested positive for mononucleosis. *Id*. at 3–4 (citing Ex. 5 at 45–46).

The "first record proof of any possible HPV vaccine-related reaction" comes from a January 15, 2019 medical appointment, over one year after vaccination, when Ms. Stratton self-reported a reaction to the vaccination and did not want to complete the series. *Id*. at 4 (citing Ex. 3 at 2). On March 14, 2019, Ms. Stratton was hospitalized for a panic attack with breathlessness and a sensation that she would pass out; she told the provider she believed she was dehydrated. *Id*. at 4 (citing Ex. 4 at 6). Ms. Stratton's condition worsened, and she visited the hospital frequently from May to June 2019. Pet. ¶ 6. Records from a cardiac evaluation on May 13, 2019 indicate that Ms. Stratton had "ectopic atrial rhythm that was first demonstrated 'several years ago' and began prior to therapy for ADHD (i.e., September 2017)." Decision on Remand at 4 (emphasis omitted) (quoting Ex. 4 at 59). Ms. Stratton was diagnosed with POTS in July 2019. *Id.* (citing Ex. 4 at 333, ECF No. 6-5).

### B. Procedural History

Ms. Stratton filed a Petition under the Vaccine Act on November 2, 2020. Pet. It was filed on the eve of the Act's three-year limitations period to prevent the claim from expiring. *Id.* at 1 n.1. Petitioner contacted legal counsel just one week before the deadline, and given the time constraints, counsel conceded he did not review Ms. Stratton's medical records before filing. *Id.* Rather, counsel "believe[d] good faith and reasonable basis are present to justify filing this Petition" based on an interview with Petitioner and his initial investigation. *Id.*

Ms. Stratton subsequently withdrew her Petition from the Office of Special Masters ("Vaccine Court") on July 6, 2021, after the 240-day statutory deadline to review her claims had passed, and she was eligible to file a claim against the Gardasil manufacturer in court. Withdrawal at 1. On July 12, 2021, Petitioner filed a Motion for Final Attorneys' Fees and Costs for work completed before the withdrawal. Att'ys' Fees Mot. at 1.

The Chief Special Master granted Petitioner's Motion with two reductions: a 30% reduction in fees for billing discrepancies and a further 25% fee reduction. Decision Granting in Part Att'ys' Fees, ECF No. 34. The Chief Special Master found the costs were exorbitant considering Ms. Stratton only filed in Vaccine Court to satisfy exhaustion requirements. *Id.* at 6. On May 31, 2023, this Court issued an Order finding the initial 30% reduction was warranted, but the Chief Special Master abused his discretion by reducing the fees by an additional 25%. Vaccine Order at 1, ECF No. 52.

The government appealed the award, and, on June 6, 2025, the Federal Circuit remanded the case to the Chief Special Master for failing to "adequately explain his finding that Ms. Stratton satisfied the reasonable basis standard." *Stratton*, 138 F.4th at 1373. The Federal Circuit did not reach the question of whether a reasonable basis for attorneys' fees and costs existed. *Id.* at 1372 n.3 ("[W]e express no opinion on whether the Chief Special Master's

3

decision was correct or incorrect. We do not reach the Secretary's argument that the objective record evidence does not establish a reasonable basis for Ms. Stratton's claim.").

On remand, the Chief Special Master determined Ms. Stratton's claim lacked reasonable basis and denied attorneys' fees and costs. Decision on Remand at 11 ("[A] complete and renewed review of the filed medical records in this case leads me to conclude that the claim lacked reasonable basis.").[3] The Chief Special Master stated "the medical record does not establish that Petitioner likely was injured by her receipt of the HPV vaccine in any medically-acceptable timeframe." *Id.* at 12. The medical record evidenced "at least two years of symptoms" before Ms. Stratton's vaccination, and Ms. Stratton's medical ailments most recently after her vaccination were nonspecific for POTS. *Id.* (emphasis omitted). The Chief Special Master specified he reached his determination "independent of [his] view . . . that claims alleging POTS as a vaccine injury generally are no longer well-founded." *Id.* at 11 (emphasis omitted). But he found Ms. Stratton's claim further lacked reasonable basis because "the [Vaccine] Program has wholly rejected contentions that the HPV vaccine is capable of causing POTS." *Id.* at 12.[4]

Presently before the Court is Ms. Stratton's Motion for Review objecting to the Chief Special Master's denial of fees and costs. Mot. for Review at 1. Petitioner claims the Chief Special Master improperly failed to consider medical research and expert reports she submitted on remand because they were filed after her case closed. *Id.* at 6–9. Ms. Stratton also contends her Declaration was improperly disregarded despite "provid[ing] specific examples of when and where the symptoms occurred and how they impacted her life." *Id.* at 11. She adds, "[t]he undisputed fact (corroborated by the medical records) is that Stratton never had POTS prior to Gardasil, and after her Gardasil vaccination, she experienced multiple POTS like symptoms (including symptoms that required hospitalizations) and was for the first time diagnosed with POTS after her Gardasil vaccination." *Id.* at 11 (emphasis omitted). Ms. Stratton argues the Decision on Remand amounted to reversible error. *Id.* at 1.

The Secretary of Health and Human Services maintains the Chief Special Master acted within his discretion to deny attorneys' fees and costs. Sec'y's Resp. ("Resp.") at 16, ECF No. 63. Petitioner's Reply asserts the Secretary's Response failed to rebut Ms. Stratton's arguments and did not address similar cases in which attorneys' fees were awarded for alleged Gardasil-caused POTS injuries. Pet'r's Reply ("Reply") at 1, ECF No. 67.

---

[3] Special masters may revise their decisions on remand after explaining the basis for the different outcome. *See Doles v. Sec'y of Health & Hum. Servs.*, 163 Fed. Cl. 726, 732 (2023).
[4] The Special Master described policy concerns about the numerous attorneys' fees motions following withdrawal petitions in the Vaccine Court as context for his original decision. Decision on Remand at 9–11. The Court does not consider these concerns in ruling on the present Motion for Review.

## II. Standard of Review

The Vaccine Act provides the Court of Federal Claims jurisdiction to review a special master's decision. 42 U.S.C. § 300aa-12(e)(2). The Court may uphold the special master's findings, set aside the decision, or remand the decision for further action by the special master. *Id.*

The Court must treat a special master's factual findings and conclusions with "great deference," and only disturb a special master's conclusions if the findings are "arbitrary and capricious." *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 (Fed. Cir. 1992) (citation modified). "This is a standard well understood to be the most deferential possible." *Id.* If the special master has "'considered the relevant evidence of record, drawn plausible inferences, and stated a rational basis for the decision,' reversible error is extremely difficult to establish." *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 405 (2012) (quoting *Hines v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)). Special masters' legal conclusions are reviewed de novo under the "not in accordance with law" standard, and discretionary rulings are reviewed for abuse of discretion. *Munn*, 970 F.2d at 870 n.10.

## III. Legal Standards

The Vaccine Act provides for the petitioner's counsel to receive "reasonable fees" if the petitioner is awarded compensation on their vaccine claim. 42 U.S.C. § 300aa-15(e)(1). Even when a petitioner fails to receive compensation, the special master "may" award attorneys' fees "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." *Id.* Here, the Chief Special Master's initial decision that Petitioner brought her claim in "good faith" was not challenged on appeal and remains in place. Decision on Remand at 7 n.9.

The quantum of evidence needed to show reasonable basis has "never been delineated with specificity" but is "markedly less than that needed to prove entitlement." *Bekiaris v. Sec'y of Health & Hum. Servs.*, 140 Fed. Cl. 108, 114 (2018); *see also Sheller v. Sec'y of Health & Hum. Servs.*, 121 F.4th 1301, 1306 (Fed. Cir. 2024) ("[W]e have not adopted a specific evidentiary framework for establishing that a reasonable basis for the claim existed when the petition was filed."). In assessing reasonable basis, special masters look "more to the feasibility of the claim," not "at likelihood of success." *L.P. v. Sec'y of Health & Hum. Servs.*, 150 Fed. Cl. 396, 403 (2020) (citation modified). However, while a successful showing of a reasonable basis for a claim requires less than a preponderance of the evidence, the petitioner still must present "more than a mere scintilla" of plausibility. *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1346 (Fed. Cir. 2020).

Reasonable basis determinations must be objective, and not take into account the conduct of the individual attorney. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635–36 (Fed. Cir. 2017). Good faith acts by an attorney—such as needing to file a petition within the statute of limitations—only apply to an assessment of good faith, not to the reasonable basis of the petition. *See id.* at 636.

5

Special masters must examine whether there is a reasonable basis for each of the required elements of a vaccine petition, which include "an affidavit, and supporting documentation," demonstrating that the petitioner:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) *or that was caused by the vaccine*;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Cottingham*, 971 F.3d at 1345–46 (citation modified) (emphasis added).

Here, the Chief Special Master focused on whether Ms. Stratton had a reasonable basis for the third requirement, showing she "sustained (or had significantly aggravated) an injury . . . that was caused by the vaccine." Decision on Remand at 11 (citation modified).

The Court of Federal Claims uses various methods to determine whether a claim is reasonable. *See Sheller*, 121 F.4th at 1306. Special masters may conduct an analysis using the three *Althen* factors, see *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005), "but at the lower evidentiary standard for a reasonable basis." *Sheller*, 121 F.4th at 1306. The *Althen* factors evaluate whether the petitioner provides "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278. In addition, the Federal Circuit has approved using a broad "totality of the circumstances" assessment. *Sheller*, 121 F.4th at 1306. Such an assessment considers "the totality of circumstances of a petitioner's claim, analyzing factors such as the factual basis, the medical support and jurisdictional issues." *Frantz v. Sec'y of Health & Hum. Servs.*, 146 Fed. Cl. 137, 143 (2019) (citation modified).

### IV. Discussion

Petitioner's Motion for Review argues the Chief Special Master failed to consider all objective evidence, including affording proper weight to Petitioner's Declaration attesting to her injuries. Mot. for Review at 1. Ms. Stratton further claims the Chief Special Master applied a higher burden of proof than necessary for assessing reasonable basis. *Id.* However, Petitioner does not refute the Chief Special Master's key finding that her POTS symptoms began before she received the Gardasil vaccine. Decision on Remand at 12. The Court finds the Chief Special Master acted within his discretion to find Petitioner's extensive preexisting symptoms precluded a reasonable basis for the claim even under the "more than a mere scintilla" standard.

> **A.     The Chief Special Master Properly Denied Attorneys' Fees and Costs Based on Petitioner's Onset of POTS Symptoms Before Vaccination.**
>
> **1.     Because Petitioner was Symptomatic Before Vaccination, No Reasonable Basis Supported Her Claim that Gardasil Caused Her POTS.**

The Chief Special Master found significant temporal inconsistencies between the onset of Petitioner's POTS symptoms and her Gardasil vaccination. *Id.* at 12. This finding supports a lack of reasonable basis for attorneys' fees, and the Chief Special Master acted well within his discretion to deny fees on that ground alone. "Temporal proximity is necessary" to show a reasonable basis for a non-Table vaccine injury claim. *Chuisano v. United States*, 116 Fed. Cl. 276, 287 (2014); *see also Wein v. Sec'y of Health & Hum. Servs.*, No. 18-262V, 2020 WL 4747780, at *3 (Fed. Cl. Spec. Mstr. July 1, 2020) ("Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases . . . ."). A claim that a vaccination caused an injury based on records evidencing pre-vaccination symptoms lacks a reasonable basis. *See Frantz*, 146 Fed. Cl. at 144 (finding petitioner's "causation theory was discredited" by evidence that symptoms predated vaccination); *see also Chuisano*, 116 Fed. Cl. at 287 ("[R]easonable basis requires presenting more than evidence showing only that the vaccine preceded the onset of the injury for which the petitioner seeks compensation." (citation modified)). Temporal proximity is particularly probative. *See Shalala v. Whitecotton*, 514 U.S. 268, 275 (1995) (holding "a claimant who has actually suffered symptoms of a listed injury before vaccination cannot make out a prima facie case of the injury's onset after vaccination").

After reviewing Ms. Stratton's Motion for Attorneys' Fees and Costs on remand, the Chief Special Master determined "Petitioner had at least *two years* of symptoms of lightheadedness and other cardiovascular symptoms *before* the vaccination at issue." Decision on Remand at 12. And the symptoms Ms. Stratton experienced post-vaccination either did not relate to her POTS condition or occurred "too long after vaccination to attribute to the vaccine." *Id.* The Chief Special Master reiterated how Ms. Stratton's 2019 POTS diagnosis records noted similar cardiac issues pre-vaccination. *Id.* (citing Ex. 4 at 59). The Chief Special Master found "[t]he required 'scintilla' is missing, and thus the otherwise easily-met reasonable basis standard is not satisfied in this case." *Id.* Based on these findings, the denial of attorneys' fees was proper.

The Chief Special Master's decision is also consistent with the *Althen* factors used to assess reasonable basis for a claim. Pre-vaccination symptoms negate "a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278; *see also Locane v. Sec'y of Health & Hum. Servs.*, 685 F.3d 1375, 1381 (Fed. Cir. 2012) ("Given the Special Master's finding that the illness was present before the vaccine was administered, logically, the vaccine could not have caused the illness. The *Althen* inquiry is inapplicable."). The Chief Special Master thoroughly detailed how Ms. Stratton's POTS symptoms began years before vaccination. Decision on Remand at 2–4 (finding before vaccination, Ms. Stratton exhibited heart palpitations, syncope episodes, dizziness, and other cardiovascular symptoms).

7

The Chief Special Master's decision properly denied attorneys' fees "when petitioner's expert failed to dispute evidence that petitioner's [ ] condition pre-dated the vaccination." *Frantz*, 146 Fed. Cl. at 144.

Alternatively, pre-vaccination symptoms could support a reasonable basis for a claim that vaccination aggravated an injury. *See, e.g.*, *Locane*, 685 F.3d at 1377, 1381 (describing presentation of initial-onset and significant-aggravation merits claims "in the alternative"). But Ms. Stratton does not make such a claim. *See generally* Pet.; Mot. for Review. In fact, as previously noted, the Petition states that "[p]rior to vaccination, Ms. Stratton was never sick with POTS, or any other symptoms of autonomic dysfunction." Pet. ¶ 2. Petitioner's denial of pre-vaccination symptoms precludes any argument that the vaccine aggravated those symptoms. *See DiMasi v. Sec'y of Health & Hum. Servs.*, No. 15-1455V, 2019 WL 6878732, at *5 (Fed. Cl. Spec. Mstr. Nov. 7, 2019) (recognizing that an aggravation claim can be pled in the alternative to an initial onset claim but declining to address such a claim where the petitioner explicitly stated she was not pursuing one).

In a lone footnote, Ms. Stratton states the Chief Special Master found a reasonable basis in a different Gardasil case, in part because the vaccination could have aggravated the petitioner's preexisting symptoms. Mot. for Review at 11–12 n.4 (quoting *Atjian v. Sec'y of Health & Hum. Servs.*, No. 21-1413V, 2022 WL 17587757, at *10 (Fed. Cl. Spec. Mstr. Oct. 18, 2022) ("Although pre-existing symptoms could demonstrate that it is unlikely that the HPV vaccinations caused these injuries in the first instance, there is still the possibility that the HPV vaccinations significantly aggravate[ed] these pre-existing injuries.")). But, unlike the instant case, the petition in *Atjian* did not deny the existence of all symptoms prior to vaccination. *See* Pet. at 1–6, *Atjian*, No. 21-1413V, 2022 WL 17587757. Other petitioners have alleged aggravation in the alternative to direct causation, and special masters evaluate the claim separately. *See, e.g.*, *W.C. v. Sec'y of Health & Hum. Servs.*, 704 F.3d 1352, 1356, 1360 (Fed. Cir. 2013); *Locane*, 685 F.3d at 1377, 1381. Petitioner did not do so here.

Regardless, the Chief Special Master did consider whether the vaccine exacerbated Petitioner's POTS symptoms. Decision on Remand at 12. The Chief Special Master found "no contemporaneous evidence that she experienced a close-in-time reaction or *worsening* of her pre-vaccination symptoms." *Id*. (emphasis added). He notes that Petitioner "never complained of *any* vaccine reaction until January 2019, well over a year after vaccination," and "she was not diagnosed with POTS until the summer of 2019." *Id*. Petitioner presents no evidence or, indeed, any argument that this finding was arbitrary and capricious.

Ultimately, the existence of pre-vaccination symptoms coupled with the significant deference this Court must afford special master decisions support a finding that the Chief Special Master acted well within his discretion to deny attorneys' fees.

### 2.     The Chief Special Master Applied the Proper Evidentiary Standard.

Petitioner argues the Chief Special Master misapplied the evidentiary standard for a "reasonable basis" analysis and subjected her to a heightened burden of proof. Mot. for Review

8

at 10–11. Ms. Stratton argues her under-oath Declaration that Gardasil caused her injuries after vaccination was actual evidence of causation, and the Chief Special Master disregarded the Declaration. *Id.* To the extent these arguments apply to the Chief Special Master's assessment of pre-vaccination symptoms, the Court finds the Chief Special Master's application of the "more than a mere scintilla" standard was sound.

Ms. Stratton asserts the Chief Special Master incorrectly applied the "preponderance of the evidence" standard in assessing her Declaration, when the "more than a mere scintilla" standard should have been used. *Id.* at 12–13. The Decision on Remand states:

> [I]t is not enough for Petitioner to *allege* in witness statements, sworn or otherwise, that she was injured, since it is well-understood that Program claims cannot prevail solely on the basis of a petitioner's personal assertions or lay beliefs. Section 13(a)(1) (requiring that a special master's findings must be substantiated by medical records or by medical opinion).

Decision on Remand at 12.

Ms. Stratton takes issue with the Chief Special Master's citation to Section 13(a)(1) of the Vaccine Act, of which Subparagraph (A) requires petitioners to demonstrate their claim by a preponderance of the evidence. Mot. for Review at 12–13; *see also* 42 U.S.C. § 300aa-13(a)(1)(A). She argues this higher standard is meant for merits analysis, not determining a reasonable basis for attorneys' fees. Mot. for Review at 12–13.

But the Chief Special Master was not citing Subparagraph (A) to apply the preponderance of the evidence standard. His citation includes an explanatory parenthetical referring to Subparagraph (B), which provides, "[t]he special master or court may not make such a finding based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1)(B). The Chief Special Master's opinion did not apply the preponderance of the evidence standard. *See* Decision on Remand at 12 (applying the "more than a mere scintilla" standard and finding "[t]he required 'scintilla' is missing"). Although demonstrating a reasonable basis does not require a preponderance of the evidence, it does require a special master to assess "the feasibility of the claim." *L.P.*, 150 Fed. Cl. at 403. Since the Vaccine Act prohibits findings "based on the claims of a petitioner alone," the Chief Special Master properly concluded Ms. Stratton's unsubstantiated Declaration was insufficient to establish a reasonable basis for her claim. 42 U.S.C. § 300aa-13(a)(1)(B).

Additionally, Petitioner argues the Chief Special Master abused his discretion by affording no weight to Petitioner's under-oath statement.[5] Mot. for Review at 10. However, Ms. Stratton again misrepresents the Decision on Remand. The Decision on Remand evaluated the Petitioner's Declaration and found it "unhelpful to support her injuries" because the statement did not address her medical history, treatment, or pre-vaccination symptoms. Decision on

---

[5] Because the Court finds the Declaration insufficient to support a reasonable basis finding, it is unnecessary to address the parties' arguments over whether the Declaration was "under-oath." *See* Resp. at 13; Reply at 7.

Remand at 12.  The requirement to review the entire record can be met by describing why certain evidence is irrelevant and unpersuasive.  *Sheller*, 121 F.4th at 1309.  The Chief Special Master adequately explained the Declaration's shortcomings in his Decision on Remand.  Decision on Remand at 12.

Regardless of the weight the Chief Special Master gave Petitioner's Declaration, a single declaration of one individual, even when it is an expert witness, is insufficient evidence to support a reasonable basis for a claim.  *Perreira v. Sec'y of Dep't of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) ("Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury.  The words of the statute require more."); *Delio v. Sec'y of Health & Hum. Servs.*, No. 18-1001V, 2025 WL 1291593, at *5 (Fed. Cl. Spec. Mstr. Apr. 2, 2025) ("An analysis of reasonable basis requires more than just a petitioner's belief in her claim." (citation modified)).  The Chief Special Master acted within his discretion to find no reasonable basis for Ms. Stratton's claim based solely on her own Declaration.

In summary, the Special Master correctly applied the "more than a mere scintilla" standard, and Petitioner's statement alone does not overcome the Special Master's finding.

### B.     The Court Need Not Reach the Remaining Allegations.

Petitioner posits the Special Master improperly ignored additional articles submitted to the record on remand supporting the claim that Gardasil causes POTS.  Mot. for Review at 6–9.  The Court need not reach whether Gardasil can cause POTS generally when Petitioner failed to show the vaccination caused *her* injury.  Furthermore, special masters must assess whether a reasonable basis existed for the claim "*at the time of filing*."  *Sheller*, 121 F.4th at 1308.  Here, the Special Master notes that before Ms. Stratton filed her Petition, numerous special master decisions found no connection between the HPV vaccine and POTS or other autonomic disorders.  Decision on Remand at 12–13 (citations omitted).

Petitioner cites several cases awarding fees and costs for claims of "Gardasil induced autoimmune, autonomic dysfunction and POTS."  Mot. for Review at 18 (citations omitted).  But Petitioner does not analogize any of those cases to the facts here, which include a finding that Ms. Stratton experienced POTS symptoms before getting vaccinated.  *See supra* Section IV.A.1.  And a "Special Master is not bound to follow the opinions of other Special Masters."  *Boatmon v. Sec'y of Health & Hum. Servs.*, 941 F.3d 1351, 1358 (Fed. Cir. 2019) (citation modified).

### V.     Conclusion

Based on the medical record, the Chief Special Master found Petitioner exhibited POTS symptoms before her vaccination.  Considering the lack of a temporal relationship, he properly concluded Petitioner's claim failed the "more than a mere scintilla" standard and lacked a reasonable basis.  Petitioner has not demonstrated the Chief Special Master's conclusion was arbitrary or capricious.

Accordingly, Petitioner's Motion for Review of the Special Master's Decision Denying Attorneys' Fees and Costs is **DENIED**.  ECF No. 62.  The Chief Special Master's Decision on Remand Denying Fees and Costs is **AFFIRMED**.  ECF No. 61.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

<u>s/ Carolyn N. Lerner</u>
CAROLYN N. LERNER
Judge